Good morning, Your Honors. Todd Burns on behalf of Mr. Kazzaz. I intend to start by discussing Mr. Kazzaz's claim that there was an insufficient factual basis to support his guilty plea on the Anti-Kickback Act charges. It seems to me you should start by telling us why this isn't within the appeal, the waivers. The waiver? Or the guilty plea. For two reasons. One, the Rule 11 colloquy was insufficient in that the judge did not ensure himself that there was a sufficient factual basis for the guilty plea. But if we allow that, don't we, guilty pleas all go up in smoke? I don't believe so, because not all guilty pleas – I would think the vast majority of guilty pleas would be supported by sufficient factual basis. But there are arguments, right? There are always going to be possible arguments. And here what you have accessory is a legal argument. So you're essentially saying if I have a legal argument about whether there is some issue that wasn't covered, therefore, I can't plead – the guilty plea can't be valid. Well, I think that sort of ties into the second reason that the waiver doesn't apply, which is the legal argument here really goes to the fundamental validity of the guilty plea, which is, did he voluntarily, knowingly and voluntarily, plead guilty based on, you know, understanding? What didn't he know? I mean, there was a pretty thorough colloquy. He certainly knew he was waiving all sorts of rights and all sorts of ability to challenge. And he knew he was pleading guilty. You're not arguing he didn't understand what the word guilty meant. What is it he didn't know? What he didn't know was that the facts that were set out as the factual basis did not establish the offenses that he was pleading guilty to. Well, what would have prevented him from looking into that? I mean, he knows what he's charged with. If it turns out that what he's charged with isn't a crime, he has plenty of opportunity to make that determination. And the Second Circuit has said that's not good enough. Why should we – why should we reach a different conclusion? I'm not sure that the Second Circuit has said that's not good enough. I certainly – I think the strongest language I found was from the Seventh Circuit, but there's plenty of language from this – from this Court and from the Supreme Court that talks about, look, defendant understanding the law in relation to the facts is key to there being a knowing and voluntary guilty plea. If he's proceeding under the mistaken belief that, well, these facts make me guilty of this offense, then that's not a voluntary – that's not a knowing and voluntary plea. Kagan. I've got two questions, though, about that. Are you really arguing that this is jurisdictional, or is this a merits defense that he could have waived, and did waive, number one, and number two, if what you're really arguing is that he should have had a better understanding of whether under the law there was a sufficient factual basis to meet all the elements? Isn't that an ineffective assistance of counsel argument as opposed to the arguments you are making? Well, it certainly could later be an ineffective assistance of counsel. Right. That's my point. But in the first instance, the district court judge has an obligation under Rule 4 of the precedent to make sure that there's a sufficient factual basis. What else should the district court judge have done? I mean, they go through all the elements. He says, I did this, I did this, I did this. Is the judge supposed to look at them and say, well, wait, let's step back here and think more clearly about what each of the factual elements is and whether, in fact, you've met them? Well, I don't believe the district court judge. When nobody is saying anything, raising any indication that there's a deficiency. I don't believe the district court judge actually, you know, went through the elements and said you did this, you did this. What he did is there was a sheet submitted with a factual basis on it and he accepted that. Right. Now, I think that there was. Which is a pretty standard way of going about the business. Sure, and in most cases that won't be a problem. But in this case, it would be, it is, because all of the conduct took place in Iraq. But aren't there all sorts of instances in which somebody could have a later argument that there was some aspect of the legal requirements that now occur, which is at least arguable, if not established. Here it's certainly not established. And which wasn't specifically explained. I mean, it was clear that the, the, where the conduct occurred from the factual basis, right? Yes, I believe it was. So it wasn't that that wasn't clear. And if there was a legal argument that that wasn't sufficient, he could have made it. But if he gets to make it after the fact, then it seems to me that you're just opening a door that anybody can step through. Not anybody, but 25 percent of cases can step through. But the, I mean, I guess in my experience, most cases are cut and dried. They aren't like this. But I guess, you know, that goes back to, well, whose responsibility was it to tell them? We certainly have a great many cases in which there are arguments about what a statute means. That's all you really have here, right? What does the statute mean? Sure. And there are lots of those. Well, again, I think that the district court judge, in looking at the facts, that and based on Morrison, you know, having come out a couple years earlier, has an obligation at that point to have some pause and say, look, everything here is alleged to occur in Iraq. Where was the money sent? Excuse me? Where was the money sent? To the northern district of Alabama. Well, then everything didn't take place in Iraq, did it? Well, that's getting to the merits issue. Well, but you're saying the district judge should have figured out that everything took place in Iraq, only it didn't. So why should the district judge have anticipated that? No, I think the district court should add pause based on the factual basis and then should have explored the issue more closely. But why couldn't the district judge do what apparently several circuits have now done at least two and said internally, if the question arose, well, extraterritorial arguments are waivable defenses and he's waiving his rights under this plea agreement and he's entered into all of the various stipulations and indicated that he knows and understands the extent of the waiver, I'm done. Well, I guess that sort of circles back on the merits. Did he waive it? Was it knowing and intelligent? And it wasn't knowing and intelligent because he didn't know that the statute didn't reach the conduct. What's your best case for saying that when you have a plea agreement which contains an appellate waiver that the waiver will not preclude the review that you're looking for and the relief you're looking for based on extraterritoriality? What's your best case? Well, honestly, I don't know that the Ninth Circuit has addressed exactly that situation. Do you have a case in any other circuit? Well, I have a Supreme Court case law that suggests to begin with that, you know, if the guilty plea is not knowing involuntary, then it's not. But that applies in a lot of different contexts. I'm looking specifically at the waiver, the effect of the waiver on the argument of extraterritoriality. I don't know that any court has addressed that specific issue. Okay. Turning, again, back to the merits, if I may, I do think that this case presents sort of a poster child for why there is a presumption against extraterritorial application of statutes. Mr. Kazaz and his company started working for the process. I have to say I'm puzzled by that, because in this case it's the U.S. government that winds up short of money. It would seem to be the poster child of why the law should be applied. Well, I think Mr. Kazaz disputed that they and the U.S. government ended up short of money. But what the idea is that the contract price is higher than it needs to be because a piece of it is being sent off to somebody else. And I was raised in Chicago. I know how that works. Well, but that's not what happened in this case. What happened is Mr. Kazaz and his company started working for Parsons in 2004. By all accounts, did very good work. In 2006, two Parsons employees, Hunt and Newell, said, look, if you want to keep doing work for Parsons, you're going to have to pay us money. It wasn't a matter of him, you know, submitting these bids and raising his price and offering the equipment. I thought that he first had a very small contract approved, and it was the two bribees, so to speak, who kept increasing the or kept with him increasing the amount of the contract. So most of the money was made at almost all of it after their involvement, right? And new contracts. Those contracts were entered into 2006. Mr. Kazaz actually and his company started working for Parsons doing this work in 2004. Then in 2006, Newell and Hunt said, look, you're going to have to give us money back if you want to keep this work. They not only said that, they said, look. I'm sorry, but they were not the source of a $10 million or so of additional contracts over some time period? Yes, they were. And those contracts were presumably at some rate? They were. And presumably that rate was influenced by the fact that the 15 percent was being skimmed off the top? Well, I think that there was a course of dealing before then that the rate was based on. So Mr. Kazaz's position all along is, look. Is there evidence of that? Excuse me? Is that in the record? Yes. Mr. Kazaz asserted that in the sentencing memorandum. He asserted it at the sentencing hearing. He also didn't agree to a term in his plea agreement that Newell and Hunt did, which is that this increased the cost. He said, look. I was already doing this work at this cost. And basically what I did is I took from my profit and paid these guys. But the problem that he runs into there is they shake him down. And they not only say, you know, you're going to lose this work. They say your equipment is out in the field. And you aren't going to get your equipment back because we've got to coordinate with the U.S. Army to get your equipment back. And your 100-plus employees are going to lose their work. Now, you'd say, well, when someone says that to you in the U.S., what do you do? You go downtown and you talk to the FBI. He's in Anbar Province in a war zone. It's not the same reality. And so applying the Anti-Kickback Act to his actions in that context, I would submit, is unfair. Well, it may be unfair if he had been in trial. These may have been arguments that the jury would have properly heard. But he didn't go to trial. He elected not to. And he elected not to under terms that said, I'm waiving all the arguments that I might have made that go to the merits, including, and it goes on and on in the usual standard language. So why isn't your argument now clearly within a waiver? Well, because he's not waiving it because a waiver implies knowing and intelligent and it wasn't knowing and intelligent. And again, I understand that Your Honor is really saying what you said in the beginning, which is his attorney should have told him that. Well, and I'm struggling with if your argument is right, then any waiver is going to be vitiated by the ability to argue later, well, wait, wait, wait. There's a defense to that. I didn't know I could make that defense, so I therefore didn't enter into a knowing involuntary plea. But the waiver. Why doesn't that undercut every waiver? The waiver won't be vitiated if the factual basis, which, by the way, the government writes, establishes the necessary facts to support the conviction. That's what's lacking here. The factual basis does not support the conviction. And it's the judge's obligation in looking at that factual basis to. I'm not understanding that part. Well, I guess what you're saying is because you're saying that it doesn't apply extraterritorial. But the factual basis supports a theory of conviction, right? It's a theory of conviction. There are two theories. One theory is their theory that it does apply extraterritorially, and your theory is it doesn't. So it supports a theory of conviction. And the question is, does the judge have to tell them that there's another theory? I believe it supports an invalid theory. And I don't think it is at all unheard of. But that amounts to the fact that you can't waive a legal argument. Well, I don't think you can waive the requirement that there has to be a factual basis. That's in Rule 11. That's required by a Supreme Court case. I mean, maybe I'm frustrating you that I'm circling back on it. But that's sort of – I mean, there's got to be a factual basis when you boil it down. And it's certainly not unheard of. There is a factual basis on one interpretation of the statute. But there isn't one on a newly developed, never raised before interpretation of the statute. So the question is, does the district judge have to – where you have an unsettled – let's suppose that we have an unsettled statutory disagreement. Does the judge have to tell every possible theory of the statute in order to provide a factual basis? No, I don't think the judge has to do that. But I do think that the judge has an obligation when the factual basis, in my view, is inadequate, but at least raises a red flag, I believe, to explore that. And that certainly is not unheard of. I mean, I've had probably more than a handful of cases where the judge says, well, but hold on, what's going on here? Explain this more to me. Let's talk more about this. Is there something going on here that there's a valid defense? I mean, that happens. And, of course, it should, because the judges are not just there to sort of process things through. You know, they have some obligation to make sure that this person, this defendant, is pleading guilty based on a correct understanding of the law and how that law applies to the fact. Okay. Your time is running. We'll give you a minute. Good morning, Your Honors. May it please the Court. My name is Katherine Votaw. I'm with the Justice Department, and I, of course, I represent the United States in this appeal. I think the Court's questions clearly go to the merits here, which is Mr. Kazaz signed a well-counseled appellate waiver. He signed a guilty plea agreement in which he stipulated that the factual statement was supportive of the elements of the crime. His lawyer stipulated to that at the plea colloquy. And now we're faced with him attempting to cram his defenses backwards into this ample plea colloquy. And the Court should reject the example that there was established law in the Ninth Circuit that the statute did not apply under these circumstances. Then what? Your Honor, this Court's jurisprudence. That same thing had happened in the plea colloquy. This Court's jurisprudence is clear that a guilty plea waives everything except subject matter jurisdiction. That includes any defenses, any defects, anything going to the elements or merits of the case. All of that is going to the court. But there are ineffective assistance of counsel, but that comes up someplace else. That could be, Your Honor. I, of course, don't think that is the case here. But what could happen in a case like this that would allow the court to reverse would be an indictment that's on its face, does not state a crime, or that this court has held something is missing on it. This happened with honest services in some cases. That was essentially my hypothetical. I'm sorry? That was essentially my hypothetical. Yes. Sotomayor, if we had established law in the Ninth Circuit last week that said that this is not, that you can't have this kind of extraterritoriality as to this particular statute. As to this particular, Your Honor, that is still a defense that is waived. And the requirements of a plea colloquy are that the judge set forth the elements of the offense, in this case the government did it, and set forth the facts. And the application of the law to those facts is what the defendant is challenging here. But that is accomplished by exactly the procedure that Rule 11 requires. And that is, you state the elements of the offense in full. You state the facts that the defendant is, that the government is going to prove that the defendant agrees to. And that's how that application is done. There is no need for the court, for the court in Rule 11 colloquy to address defenses of any type. So is your position that the entire argument about the sufficiency of the record evidence, including in the stipulations, of a loss to the United States is simply irrelevant? Yes, Your Honor. I believe that's simply irrelevant, because If it's not simply irrelevant, and I'll get back to your because. I don't mean to interrupt you from completing the sentence, and I apologize if I did. If it's not simply irrelevant, is the record evidence, including the stipulated facts, sufficient to support a loss to the United States simply because the Parsons' money that was used by Kazaz to fund the kickbacks came from the United States? Is that enough? The record here is enough because the defendant stipulated to pay close to a million dollars in restitution, and that restitution was clearly going to be to the United States because it was the government's money. The point about him being extorted and shaken down is nowhere in the record. There are some allegations at the sentencing hearing that it was his father sitting in Dubai who made him do this, and it was the bad guys, the American bad guys, who made him do this. But as the Court has pointed out, this was a course of conduct. And as the government pointed out at the sentencing hearing, the kickback agreement preceded the initial contract, and then there was a series of extensions and funding increases and a new contract with its funding increases that were all fueled by this kickback agreement, thereby causing a loss to the United States. And what the defendant was arguing at sentencing was that because Mr. Newell and Mr. Conspirators had been ordered to pay restitution, the government was seeking to double-dip or triple-dip, and that he should be excused from paying this restitution. And the Court disagreed quite properly. He agreed to do it in his plea agreement. But more importantly, the colloquy to establish either kickbacks or mail-or-wire fraud, the elements of those offenses do not require a loss to the victim. Now, I don't truly understand the skilling argument. I don't think there's any court that has said that the skilling decision affected money and property, mail-or-wire fraud, as this Court terms it. The skilling decision narrowed the scope of honest services mail fraud. It did say a sentence about symmetry, but that was no holding about the scope or the propriety of regular old mail-and-wire fraud. Sotomayor, the premise seems to be, as I understand it, but it still has the same plea agreement problem, that the theory had to have been that he – that his fraud was in not providing honest services, i.e., being – performing this contract when he wouldn't have otherwise, perhaps, rather than in taking any – in any impact on property, because he had no impact on property. That's his argument. That's his argument, Your Honor, and that's not what was charged and that's not what he agreed to. The elements of mail-and-wire fraud were properly set forth. They came right out of this Court's jury instructions, and it requires a scheme or artifice to defraud or to obtain money or property under false pretenses or fraudulent pretenses. That was clearly satisfied by the plea colloquy. Kagan, your notion would be that he obtained the contracts under false pretenses, i.e., the false pretense being that he was on the – he was getting on the merits not by paying somebody off? Is that essentially the false pretense? The false pretense is that it was infected by kickbacks, absolutely, Your Honor. And whether he would have gotten the contract without the kickbacks is not a matter that goes to the merits. It's a jury nullification argument that you make to a jury. What about the argument that the contract wouldn't have cost any more had there or less had there not been kickbacks? That's always possible in some world. It is not on the record in this case, however, because he stipulated that there was a close to a million-dollar loss, and that's what restitution is for. Restitution is for loss. Where in the record? You mean by the restitution agreement? Yes, Your Honor. By agreeing to that restitution, he stipulated to that amount of loss? Yes, Your Honor, absolutely. But more fundamentally, the elements of mail-in wire fraud do not require an actual loss. The elements were correctly set forth. The facts were correctly set forth. The defense, I think, wants to go back to the McCarthy time, and I don't mean the 1950s. I mean the McCarthy decision of the Supreme Court, which said things about applying the law to the facts. And as the Supreme Court later said in Vaughn in 2002, since McCarthy, there have been huge changes to Rule 11. There's been a whole iteration of protocols that have to be followed, rights that have to be read. And that is how, I submit, that is how the law is applied to the facts, by following those protocols. And this Court has said so in, I think, Portillo-Cano as well, that the law is applied to the facts. A full factual basis and a full statement of the elements of the crime are how you apply the law to the facts. More is not needed. And it's true that later some clever lawyer could come up with defenses. He doesn't raise venue. He doesn't raise personal jurisdiction. He doesn't raise statute of limitations. These are all defenses that are waived with a full guilty plea. And that's the case here. I return for my last moment to the standard of review. The standard of review, excuse me, is plain error on the full record before the district court at the time of sentencing. And I submit to the Court that there was no error here. There was certainly no error that was plain, obvious, or clear. And there was certainly no error that fundamentally affected the public's perception of these judicial proceedings or the integrity of those proceedings below. And if you read the indictment as a whole, it amply states the el – it states the crimes that he committed and that he pled guilty to, and the factual basis supports it. Thank you, Your Honor. Thank you. I'll give you a minute in the crowd. I only seek to go back as far as 2009 in this Court's opinion in Encinas v. Flores, in which the Court said the factual basis requirement is meant to ensure that a defendant does not plead guilty based on a misunderstanding of his conduct in relation to the elements of the crime charged. Encinas Flores, citing McCarthy. But if you look at the elements of these offenses, where is the requirement of a loss set out? So that's going to the – rather, the extraterritoriality, that's going to the honest services argument. And the argument there is, look, the government proceeded on traditional fraud. Traditional fraud, boiling it down, is I lie to you to get your money. So in the context of this case, it would have to be the – But I'm looking at the elements as they were set out, and where in there is there a requirement of fraud? For – in the honest services context? No. In the elements that were set out in the colloquy here. For the wire fraud and mail fraud? Yes, sir. Well, what's missing here is that Mr. Cazaz did not defraud the United States. He had no relationship whatsoever with the United States. That's exactly the reason why the honest services theory was created, to deal with situations like this. Skilling says – this is a kickback case. A kickback case is – Skilling says it's plain as a pike staff that those are honest services type cases. Because you don't have that – Didn't he say it the other way around, i.e., an honest services case covers, plain as day, a kickback case? But it didn't say that every kickback case has to be an honest services case. Well, I suppose it doesn't have to be. But again, it's – you go back to common law as far as what defraud means. Defraud means A defrauds B. Or here, Mr. Cazaz defrauds the United States. But Mr. Cazaz did nothing to defraud the United States. He had no relationship with the United States. If anyone defrauded the United States, it was the Parsons employees. Who paid the money? Where did the money come from? The United States Treasury. Sure. But Mr. Cazaz said nothing dishonest and nothing deceitful to the United States. The people that did that were Newell and Hunt. So perhaps the United States government could have gone on an honest services theory in which Mr. Cazaz was a conspirator. They didn't do that. They charged and they proceeded on a traditional fraud. And it just doesn't fit here. Thank you very much. Thank you. Thank you for your argument. The case of United States v. Cazaz is submitted. We will go to United States v. Amparo-Palmaros.
judges: Rosenthal, BERZON, CLIFTON